Case is 14-5001 and 14-5058 Virtual Studios Inc v. Beaulieu Group LLC Oral argument, 15 minutes per side Mr. Buscemi for the Defendant Appellant Cross-Appellee Good morning. Good morning. Thank you, Your Honor. May it please the Court. I've asked to reserve four minutes for rebuttal. The clerk asked me to tell you that. You may. Thank you. Thank you. Section 412 of the Copyright Act provides in no uncertain terms that there shouldn't be any award of statutory damages or attorney's fees for any infringement of copyright that commenced, and I'm reading now, after first publication of the work and before the effective date of its registration. So in order to recover statutory damages, a plaintiff must show that the first infringement of the work occurred after the effective date of the registration. Otherwise, if it occurred before the effective date of the registration, statutory damages are unavailable. It's undisputed that that's the rule. The District Court so instructed the jury. We're talking about statutory damages in this case because the District Court refused to permit plaintiff to seek actual damages or any alleged additional profits earned by defendant due to plaintiff's failure to provide information in discovery about any of its claims in that regard. So the plaintiff proceeded solely for statutory damages and an injunction. An injunction was awarded and it's not here on appeal. So the plaintiff has the injunction against the conduct that it complained about. Now, as to the damages portion of trial, statutory damages, the only thing that was sought, and that's what brings us to Section 412. Why did Congress adopt this rule in Section 412? Why do we have this proposition that the first infringement must have occurred after the registration? Well, this Court has explained that in the case of Johnson v. Jones. And although I don't want to read anything from other cases, I would like to just read this little portion from the Court's opinion in Johnson v. Jones. Let me interrupt you. On whom is the burden of proof to show when the first usage was? The plaintiff, Your Honor. The plaintiff must show, and that's not in dispute. Everyone agreed that the plaintiff needs to show that the first infringement occurred after the effective date of the copyright registration. Now, this... Would that be for each picture or the pictures as a group? Well, it's for the work, Your Honor. Again, focusing on the language of the statute, the statute explicitly says that no statutory damages shall be awarded for an infringement that commenced after first publication of the work and before the effective date of its registration, namely the work's registration. So... Is the work all group of pictures or each picture takes place? It's each individual... In this case, each individual room scene image, each unique photograph. And that's... Your Honor's question points out one of the major failings in this case. I mean, one of the failings in this case is that the plaintiff proceeded on the theory that there could be a large dump of documents into the record, three big wads of documents, 11 different copyright registration forms that go on for pages, a huge number of exhibits of photographs allegedly presented to the Copyright Office, more than 1,700 of them, and then another huge number of photographs, plaintiff's exhibits 1 through 3 and 8 through 15, which plaintiff claimed were the infringing activities. And then the plaintiff says, okay, there must be some infringement in there somewhere. Just cutting to the chase, Mr. Viscini, before your time is up, I think we get all of that. Why is there not sufficient circumstantial evidence in the record for the jury to have concluded that at least 13 out of these 73 images that they said violated occurred in the time sequence that you say the statute requires? Well, because, Your Honor, I ask, I answer that question with another question. Let's assume. Not really the way it works. I understand. I'm not putting, it's a rhetorical question. Let's assume that you wanted to determine on this record whether the first infringement of, let's pick an exhibit, take one of the numbers that the jury listed on the verdict form, pick one, and say, okay, now how do we prove based on this, how does the jury conclude based on this record that that photograph had its first infringing use after the copyright registration? It can't be done. When we ask the plaintiff in the briefs in this case to do it, the plaintiff said, I don't have that evidence. What I'm relying on is the circumstantial evidence that you didn't come forward with your showing of when the first infringing use occurred. Well, that's not exactly true. My understanding from reading this is that the testimony of somebody named Sucher is being relied upon heavily by the plaintiff here to provide the circumstantial evidence that I'm asking you about. I realize that what you're just saying was part of their argument, and there may be other testimony that we'll find that the plaintiff says they were relying upon, but Sucher seems to be one of the keys here. Why is that adequate or inadequate? Well, Mr. Sucher is the president of Virtual Studios, the plaintiff, and you're right. He testified at both the liability phase and the damages phase. But Mr. Sucher never attempted to say with respect to any photograph that we registered the copyright for this photograph on day one, and the first infringing use occurred on day two or thereafter. Let me ask it another way. Let's assume using your hypothetical that he testifies, we registered this on day one and I saw this on day two, and that's all that he knows. Now at that point, does the case fail because he hasn't carried his burden, or at that point is it incumbent upon you to rebut that, the significance of that, by showing that in fact you did use it before day one? No, Your Honor. It is not incumbent on us to do that. So the plaintiff has to, in every one of these infringing cases, has to prove a negative that not only did they discover it after it was registered, but it couldn't have been used prior to that. That doesn't sound like that would be the law. Well, it is, Your Honor, and that's why I started with section 412. So how does the plaintiff prove a negative then? Let's get outside the parameters of this case, just in general. How would the plaintiff ever prove that? That's why I started, Your Honor, with section 412. Because the purpose of section 412, and I asked the court to read the entire opinion in Johnson v. Jones, but the purpose of section 412 was, as the court said, to have copyright holders register early and often. In the normal case... We understand that. The idea is to make people register. Put it on the public record. We get that. But it just seems odd that if your construction of the statute is such that no plaintiff can ever meet it, that doesn't sound like that could be right. Your point is register before you put it out there. Exactly, Your Honor, and that's what happens in the normal case. That's why this case is so bizarre. This is a case in which the parties did business together for years. Mr. Suker testified that they had provided some 120 room scene images to our client during the period from 2000 to 2007, and it wasn't until the last week of December of 2007 when they first started registering. Let me ask you this question. He does testify that there's a pretty quick turnover of at least the store placards that were infringing, right? Suker does. He says it's a fashion industry. Remember that testimony? He does say that, Your Honor, but I don't think... So, I mean, is that circumstantial evidence that if he's finding infringement years after 2007, would that allow a jury to infer that it began post-commencement? Your Honor, I don't think so, but let me make sure that the court appreciates both aspects of what we're talking about here. It's not only that he says, well, I saw some things in a store in 2012, but he doesn't even say that this photograph is the one that I'm talking about, and this is the photograph that was registered on such and such a day, and this is the photograph that they had the right to use for the year, and that year expired here, and that's why it was infringing thereafter. It is about as loose as it gets. Not to say it's too loose, you know, but did you... My understanding is you did ask for the verdict form to have the jury specify which images were the basis of the statutory damages. Yes, we did, Your Honor. And that was rejected? It was rejected in the sense that it just didn't happen. Did you... I mean, was there a ruling on that? Yes, the court said that the court didn't like to ask too many questions of the jury, and that the court didn't want to have questions and sub-sub-questions, but really it would have required only one more question to say, which of the infringing images do you find are appropriate basis for statutory damages? But you don't make any argument here about that omission, I guess. Well... I don't see that. We haven't appealed on the ground that the verdict form was deficient. We have said, however, that we can tell what happened. That's a pretty tough road to go down. Your Honor, I know it's a tough road to go down, and that's why we wrote the brief the way we wrote it. We wrote the brief to say, let's take the entire verdict form, let's take every one of those documents, pick any one, show us when we had the right to use it. They don't complain that we used any document that we didn't have the right to use at some point. They say they gave us the photos for a year, at some point the year expired, and thereafter we were no longer permitted to use it. You would have thought that with respect to specific photos, they would have said, okay, this photo was licensed on October 13, 2002. It was allowed to be used for a year. Any use thereafter was infringing. They didn't do that with respect to any photograph. And so we can't, standing here today, we can't know when the prospective period of infringement began, because we don't know when the one year... All they say is, well, it happened years before. Think about what they're telling you. They're telling you that they provided us with 120 images during the seven-year period, all of which we wanted to use to market our carpet. We had the right, they say, to use it for each one for a year. But they say we didn't do it. We either didn't use it for the year, or we used it, then we stopped using it, then we waited several years until after the registrations occurred in 2007, 2008, and 2009, and then we started using it again, and that was infringing, and that was the first infringement. And they don't say which one they're talking about. Am I right that it's not clear what 13 photos they picked? Well, Your Honor, we think it's clear, and I do want to take just one moment and ask... Excuse me, Your Honor? Or there's an issue about it anyway. Well, what the plaintiff... The verdict didn't specify 13. The plaintiff... You're right, Your Honor. The plaintiff says, we don't know, we can't tell. The 13 are in there somewhere. There's a total of 73 numbers or 74 numbers on the verdict form. Somewhere in there, there's 13. We said to them, well, pick one, any one, and show us that you've satisfied the statutory requirement. They didn't do it. They said you should have come forward to show that you first infringed after or before the registration. So, you know, that hasn't been done, but if Your Honor will take a look, it's a 10-page exhibit. It's just 10 pages. It's Joint Appendix 29 to 38. That's the chart of Mr. Senatempo, who testified for us on the damages, and then plaintiff put his chart into evidence as Plaintiff's Exhibit 100. They told the jury, rely on it, in the rebuttal argument on damages. The jury was out for one hour, from 125 to 225. They came up with a list of 74 specific four-digit numbers. They didn't get it from nowhere. They got it from that chart, and you can go through that chart, and you can see that for each separate room image identified by Mr. Senatempo, and he pulled out all the duplicates that were found in the photos in the stores, because he said you shouldn't count the same photo more than once. Excuse me, you're way over your time, so wrap up your answer to the question, will you please? Sure. I'm really through, Your Honor. I think that's how you can tell what the jury did. Thanks very much. May it please the court, Mike Anderson here on behalf of the Appley Virtual Studios. I will not try to use soccer time. In fact, I expect my argument may not even use my entire time. But we're here today contending that the circumstantial evidence that was placed into this record and the reasonable inferences that can be made from that circumstantial evidence, more clearly than not, shows that it is more likely than not that the 13 images for which the jury awarded statutory damages were registered before their first use. Well, let's just, I mean, I want to ask you about that, because I thought the briefing was excellent on both sides, but it is true that your brief seems to have not a single record site in support of the proposition that you just made. I don't see anything in here that tells me what evidence in the record would allow the jury to find that 13 of these images were registered before the infringement began. So I'd like to ask you what record evidence specifically supports what you just said. There is evidence in this record, Your Honor, from the testimony of representatives above you. And if you'll recall from the briefing, the dispute in this case arose in the 2007-2008 time frame. At that point in time, BOU's officer, Patricia Flavin, testified that she told her people to continue ordering room scene images from virtual studios. That is at or about the time all of these images were being registered. Later, there is testimony from Gina Floyd in the record, Exhibits 40 and 41, that BOU... Is this trial evidence? Yes, sir. This is Exhibits 40 and 41 that BOU introduced into evidence in this case showing that virtual studios sent 14 new images to BOU in 2010. Those images that were introduced on those exhibits show that in September of 2010 and in December of 2010, virtual studios was sending its images to BOU, new images, for its use in displays. When were they registered? Those images would have all been registered between 2007 and the end of 2009. In response to your brother counsel's arguments, you agree you didn't say specific image, specific date, specific use, but you did say they were registered within a period between A and B and the use was after B. We did, and in the defense of the jury, we probably didn't do as good a job as we should have done or could have done to lay that out for them more specifically. But they had all of the information and evidence that they needed to know, and this record makes clear there were 13 or more images that were provided to BOU. We don't know which 13 they picked. But we do not know which 13 they picked, but they are on the list in the verdict form. Those 14 that you just mentioned, I've got the form in front of me. Those are in the record and are on the verdict form. Do you know what range we're talking about, 77 what? I don't have that information with me on hand, Your Honor. I apologize. So you have that. They sent 14 images in late 2010. What else do we have? They testified that they were making displays with these images during the entire period of time. Who's they who testified? Mike McAllister was a representative of BOU who testified about the preparation of displays as well as Wendy Jaynes. Ms. Jaynes testified that she worked with Home Depot. There was evidence at trial submitted that some of these images that we complained about were used in Home Depot stores. She testified that she would give photographs that BOU had obtained from virtual studios to Home Depot to use. Doesn't know when they first started using them. Doesn't know what use they put them to other than they used them for displays. Well, I mean, what does that do for us? We don't know when BOU got those photographs. We don't. That's useless for this purpose. And to Judge McKeague's point, he asked counsel, are we required to prove a negative? All you have to do is register before you start sending this stuff out, which is the whole point. In an ideal world, we wouldn't have an issue. It's not that hard. I mean, it was just an oversight here. There was an oversight, but there is clearly evidence that they were registered. There is clearly evidence that 13 or more of the images that were registered were eligible for statutory damages. That's just what I'm trying to nail down because, again, it's simply not in your brief. I've got the late 2010, 14 images. Correct. I don't know if those are the 14. And I'm just trying to give you an opportunity to tell me what else do you have. We tried to do the same thing. We asked BOU. Is there anything else? You've given us two places to look. The first was the testimony of two people plus 40 and 41. Then you just gave us a second way that, as Judge Gessler just pointed out, doesn't sound very persuasive. So is there anything else? There was evidence admitted into the record that initially the work that was being done by Virtual Studios for BOU was to manipulate images that Virtual Studios obtained from BOU. In other words, they were BOU-issued images. It was not until much later in time, when this dispute arose, that BOU was obtaining images from Virtual Studios to use on displays. Bruce Stern. Was that a date after all the images were registered or not? It was unclear as to whether. So, again, how does that help us? It's unclear. It helps you because the jury can reasonably infer, and this court can reasonably infer in a de novo record, that our having asked BOU to tell us when they first used those images and it maintaining that it could not tell us when it first used those images, it's reasonable to infer from us having attempted to prove that negative that those images were not used until after they were registered. How is that reasonable? Well, it's reasonable because you would presume that if BOU had evidence to support its affirmative defenses, that it used these images before they were registered. It's not an affirmative defense. I mean, it's your burden of proof in the first instance, right? It is our burden of proof. And why would they keep records? They could care less, presumably, in their ordinary business practice. Presumably, accepting that the discussion occurred between the parties about the issue of whether they were authorized to use these images beyond a period of one year. So BOU was on notice that we were concerned about it, and then we began the registration process, and they continued to order images from us after that time. And the jury in this case, we can't ignore the fact that the jury in this case listened to this evidence, listened to BOU's arguments, and found that they willfully violated it. They were mad, clearly. The question is, you know, is there a sufficient basis for this particular determination? Under a preponderance of the evidence standard that we had to meet in order to meet our burden of proving that there was copyright infringement in this case, and the circumstantial evidence that was in the record, the exhibits that were put in the record, the fact that the only evidence of first use was that offered by Mr. Suker. There are well over two dozen images on that verdict form that he testified that the first time he ever saw them being used by BOU was in 2012. That's the only evidence as to those images' first use. It was reasonable for the jury to infer, based on the testimony about this being a fashion industry, based on the testimony about these images being used on displays in different stores, that those images were not first used until after registration. Well, let me ask you a question about that because I was curious about that as well. If he had testified that he routinely searched himself or had somebody else search to make sure somebody wasn't infringing, and that's when he first saw them, it seems to me you might be able to draw a different inference than if he simply testified, I was in Home Depot one day, I happened to see this on their screen, and I got intrigued and I looked for it. That really doesn't prove that it was or wasn't used in an earlier date. So what did he say? He said that once he found out that they were using these images, he began looking to see whether they were continuing to use the images improperly. But the negative of that is he wasn't looking prior to that. He was not looking prior to that. So why would you then draw the inference that they didn't use it prior to that date? Well, you would draw the inference because the testimony was that they prepared these displays. As a fashion industry, fashions are changing. They send these displays out. I think the testimony was they spent almost $25 million to $30 million a year making these displays. But they send them out for the purposes of marketing particular new lines of carpet. They, in fact, testified that they didn't use an image until they were going to introduce a new line. So they had a stockpile of images that they obtained from our client and others, but the uncontroverted testimony was they didn't use them until they initiated a new product line. So from all of this, we contend that there was adequate evidence. So where do we find the testimony that corroborates that the use corresponded? I guess it's a several-part question. Where do we find the testimony that says the use commenced with the introduction of the new line and that there were at least 13 or more new lines that were introduced after the last registration? To the first part of your question, that testimony was discussed with Mr. McAllister of Bow U and Ms. Floyd. I don't think there's any testimony that addresses the second point that you raised, and that was that there were 13 lines introduced more than one year after the first registration. So again, how does that help us? How does that make it reasonable for the jury to infer that there must have been that many new lines if that's what you're hanging your hat on? I'm not necessarily hanging my hat on that. I'm hanging my hat on all of the circumstantial evidence that we put into the record. But as to that particular piece, it may not weigh as heavily as some of the other evidence that the jury had from which it can make its determination. The burden of proof is on you. I don't understand why you couldn't have sent out an investigator or something and found out when these images were first used. Well, as Bow U testified, it's extreme. That wasn't my question. Can you go to the customers, the Wal-Mart or whoever's using the images and find out when they used them? Well, Your Honor, they don't share that information, number one. Number two, it would have been an extraordinarily expensive undertaking to attempt. Well, you ended up with $1.9 million. Well, and they didn't... Yeah, nobody ever thought it was going to be that big a case. Well, there are more than 13 images in this record that are eligible for statutory damages, but we did not... The reality here is you weren't really going in to try to prove a statutory damage case. Well, in reality, we had not made that election yet. In all likelihood, we would have attempted to prove an indirect profits case. Just putting this in perspective, not that it affects the outcome here, what were you seeking in actual damages? In actual damages, we had not made that determination because we didn't know yet what Bow U had derived in terms of revenue from the use of these particular images. We had information telling us what they spent. You were precluded from introducing it because you didn't offer up what your profits were or how it affected your profits, right? That is correct. Oh, come on, give me a... You're telling me that you filed a case, you went through mediation, presumably, you went to trial, and at the end of the trial, you still didn't know what your damages would have been had the judge allowed you to put them in? We knew that our damages were premised upon what Bow U had profited from illegally using our images. That was our theory as we proceeded to trial. We never got to the point of discussing what the value of that would be before we went to trial. What was the trial evidence, like $53,000 or something like that? That was... Was it your witness? There was testimony from their expert that stated that, in his opinion, the measure of damages, actual damages, would be $50,000 to $57,000, $57,500, I think it was. You had no expert that would have testified? We did not offer expert testimony. Let me ask you that. Did you have an expert that would have testified had the testimony not been precluded? We withdrew our expert. So you had one or you didn't have one? We did not have an expert testify. I didn't say testify. Did you hire a damage expert? We did hire a damage expert. Did that person prepare a report? That person did not prepare a report. Did the person tell you what the person was prepared to offer up in testimony? Yes. And what was the number? It was like $25 million, if you want to know. Okay. I do want to know. Okay. But we, as a matter of trial strategy, determined that that might be a little preposterous for a jury to accept. Probably a good strategy. I mean, this is just a factual inquiry. Did you all work with our circuit mediator at all in this case? We did. All right. In light of this discussion today, would it be beneficial to have the mediator take another pass at this, you think? I would think so. Okay. Good. I'm always in favor. We'll ask your fellow counsel in a moment. Okay. Anything else you want to tell us? No. I do have a question on the other. Nobody's mentioned the excessiveness of this. Well, this court— Let me finish. I'm sorry. If impunitive damages, the most the Supreme Court has allowed is nine times. And in a recent case, they said if the consequential damages are substantial, it will only be one time. Well, so how can you justify this 833 times the actual damages or at least several times the actual damages, a couple hundred times the actual damages? I mean, we're talking about pictures of rooms here. They didn't steal somebody's novel and copy it or something. Well, what we have here is this court having considered this very issue that you're asking me about in the Zombie Enterprises case earlier. Yeah, I know that, but that one says if it shocks the conscience, basically. The first blush rule that— That is correct. —that this seems—533 times for this seems— I understand. —excessive. The trial court passed on that and determined and stated in his memorandum of opinion and judgment that he did not find it to be excessive or shocking based on the evidence. What if we find it shocking based on the evidence? Well, I would still maintain that the extraordinary deferential standard that this court has addressed earlier as to statutory damage awards should carry the weight at the end of the day.  It's a pretty unique standard, I guess, right? It is a unique standard, and it breeds to us as it's—you have to show more than an abusive discretion in order to overturn a damage award that's within the legislatively set range. Thank you. All right. Thank you, counsel. I didn't address our attorney fees argument, but I'll rely upon what we put in our brief. Very well. Your Honor, I appreciate your giving me a few moments. I only have a couple of quick points. First of all, I did look at the exhibits to which counsel referred. They don't identify any specific documents, and there is absolutely no way to tell. And I think when the court looks at those exhibits, the court will realize that there's no way to tell whether any of the documents that were provided in 2010, that handful, are or are not on the jury's list.  Counsel was asked to give an example of a specific number, of the Bates number, that was first infringed after registration. Counsel just said there's 20 of them on there, but he didn't name one. And the reason is it can't be done. And that's the whole problem in the case. And there's nothing in the testimony that was referred to that does it either. It's not a question of proving a negative. That's a catchphrase, but it's not a negative. It's a positive. They have to prove the first infringement after the registration. And these images, we know, for example, because Mr. Suker testified, that he saw the images on the website, on our client's website, and he complained about it in 2007. He said, I got started complaining about it in 2007, and it went on thereafter. So that was before any registration. So we know that for the website images that are listed on the verdict form, the proof that they say they want is in the record. Their own client testified that we were using those images prior to registration. Is there any case that says that if the testimony shows it was registered on day one and there was use on day two, that that's not adequate for statutory damages because there isn't any proof as to whether it was or wasn't used before day one? I understand what you say the statute says. I get that. But is there any case that reads it to impose that obligation on the plaintiff? I'm not familiar with such a case, Your Honor. But I hasten to add that this is a case of extensive use prior to the date of any registration. So we know that with respect to many of these images, we can't say how many, but we know with respect, why would we have paid the money that it cost us to get the images if we didn't intend to use them? We obviously were using them. So with respect to the images that were in the stores, the plaintiff's position is we put the images in the store and we just left them there. The plaintiff says we should have gone and gotten them and taken them back. So the plaintiff's theory of the case is our wrongdoing, our infringement, was that we took the images to the stores and we just left them there. There's no suggestion that we first, we bought them, we used them, then we withdrew them, then we started infringing again after they registered. That evidence is missing. And they can't identify a single one. And, you know, the fact, it is true. There were a few images that they sent to us in 2009 and 2010. But there's no connection between that fact and any of the numbers that the jury put on the verdict for. These are on CDs, these images? Some of the images. There were the ones that were on the website and then there were the ones that were provided on CDs that were then turned into what they call rack cards or desktop cards where you could see a photograph of the room with the rug. And, Your Honor, I don't need to belabor the point. The Supreme Court's decision back in 1919, which has not been changed, which this Court recognized in Zamba, does give the Court the opportunity to review a statutory damages award. And it's not irrelevant what the relationship is between the amount of damages awarded and the amount of lost income to the plaintiff, which here was in four figures. Would we have the authority to grant a remittiture or would we have to send it back for any trial? Well, Your Honor, I think you could. We ask you to grant a remittiture yourself and just fix a number rather than prolong the agony. But the considerations that go into a statutory damages award are just so different than some of the other areas you're analogizing to. I mean, the jury sense that your client brazenly, brazenly infringed matters as a policy matter. It's a support for the number. It's not just some multiple of their actual damages. Isn't that a fair description of the law? Your Honor, I don't disagree with you that the multiple is the be-all and the end-all. All I'm here to say is that the Supreme Court in 1919, in cases that we've cited in our brief, St. Louis IMS Railway against Williams, and then the follow-up case shortly thereafter, and then this Court's recognition of that in Zamba, shows that there is a room for judicial review. There is room for the Court to consider the proportionality, the reasonableness, the excessiveness of an award. And here, as the District Court found, there were bases for our position. The jury admittedly didn't buy our position. The jury said we infringe willfully. But, you know, they were relying on a term and condition that they put on the back of an invoice and said that showed you can only use it for a year. I understand. Well, since your time is basically up, I just do want to say, I want to reiterate what Judge McKeague said. You really might want to think seriously about mediating this case. Somebody is going to be very disappointed. We fully understand your argument, sir, which you've made very clearly, but you know how hard it is to prevail on that argument, the sufficiency. So I would just echo what my colleague said about you might want to have a conversation about this. Thank you, Your Honor. Thank you. Thank you. Interesting case. Case will be submitted. Please call the next case.